UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SEAN CRAWFORD, : | |
|     Plaintiff, : | |
| : | |
| v. : | No. 24-cv-0798 |
| : | |
| COUNTY OF CHESTER, *et al*. : | |
|     Defendants. : | |

**MEMORANDUM**

**Joseph F. Leeson, Jr.**                                                                                                                       May 21, 2024
**United States District Judge**

      Plaintiff Sean Crawford, a pretrial detainee currently incarcerated at the Chester County Prison ("CCP"), filed this civil rights action pursuant to 42 U.S.C. § 1983 primarily challenging the constitutionality of a policy or custom that governs the dental care available to CCP inmates, which Crawford claims deprived him of necessary dental care. Currently before the Court are Defendants' Motions to Dismiss the Complaint, Crawford's response thereto, and Defendants' replies thereon. (ECF Nos. 14, 21, 27, 29.) For the following reasons, the Court will grant the motions in part and deny them in part.

**I.**     **FACTUAL ALLEGATIONS**

      Crawford filed his Complaint against the County of Chester; George Roberts, Deputy Warden of CCP; PrimeCare Medical, Inc., the medical contractor for CCP; and four current or former employees of PrimeCare — Karen Murphy, a Health Services Administrator; David Kneal, a dentist; Martin Zarkoski, another dentist; and Kevin Gaffney, a physician's assistant.

(Compl. at 2-5.)[1]  The events giving rise to his claims occurred from January 28, 2022 through the present during his incarceration at CCP.  (*Id.* at 7, 11.)  Crawford challenges the constitutionality of an alleged policy or custom at CCP governing dental care available to inmates, established by contract between Chester County and PrimeCare, which he describes as "an 'extraction only' policy" that "categorically precludes fillings and cavity repair treatments for dental [cavities] even where they are the most appropriate and least invasive treatments."  (*Id.* at 8; *see also id.* at 8-9 ("Defendants County of Chester and PrimeCare Medical, Inc., agreed though contract [to] a set policy and custom . . . maintaining limitations on dental treatment for non-medical reasons thereby preventing dentists from performing all necessary and appropriate dental procedures most commonly used for restorative dentistry or any corrective care . . . [including] dentures, fillings, crowns, [and] root-canals on a blanket basis.").)

Crawford alleges that upon his admission to CCP,[2] he informed Defendants PrimeCare, Roberts, Murphy, and Gaffney that, prior to his incarceration, he had an appointment scheduled with a "dentures specialist" to fit him for dentures and to repair cavities in two teeth that were causing pain and discomfort while eating.  (*Id.* at 12.)  In response, Crawford was told that "policy at [CCP] restricts available procedures and he will not be able to get dentures until his release from [their] care and custody."  (*Id.*; *see also id.* at 9 (alleging that the Defendants "refuse to provide dentures when the dentist acknowledges it" and instructed Crawford that he "must wait to be released").)  Crawford filed grievances claiming that he was being refused necessary medical treatment because he required dentures to be able to eat without pain.  (*Id*. at 12.)

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

[2] It is unclear when Crawford was admitted to CCP.

On April 27, 2023, Drs. Kneal and Zarkoski informed Crawford that "they needed to extract 'two' more teeth as policy will not allow them to offer any 'restorative dental treatment' such as fillings, root canals or corrective care . . . even where they are the most appropriate and least invasive treatments."[3] (*Id.* at 13.)  Crawford alleges that he continued to report his dental pain to prison officials, noting that his dental issues caused weight loss, discomfort when eating, ongoing bleeding and swollen gums.  (*Id.* at 13-14.)  He alleges that he has been in "severe pain" for approximately thirty-five months because he was denied dentures as a result of CCP's "extraction only" policy.  (*Id.* at 14.)  Although Crawford has been given Tylenol for pain and anti-biotics for infection, he claims he has not received any treatment for his bleeding gums or weight loss, nor has he received treatment for his underlying dental issues.  (*Id.* at 15.)

Based on those allegations, Crawford brings claims for deliberate indifference to his serious medical needs.  He seeks damages and injunctive relief, including an order directing the Defendants to provide dental care "in the form of dentures and [restorative] dentistry i.e.: cavity repair and fillings."  (*Id.* at 16-17.)

Crawford attached various exhibits to his Complaint, including copies of grievances he filed about his dental issues.  Specifically, he filed a grievance directed to Deputy Warden Roberts on January 15, 2022 that asked Roberts to help him "find a solution to [his] dental issues, as the dentist here explained he can not provide dentures due to policy set by administration and [he] will need to wait until [he goes] home."  (*Id.* at 25.)  Crawford filed a second grievance on April 28, 2023 directed to Roberts and the Warden along the same lines, noting that he was "in severe pain and am being refused dentures and cavity repairs for non-

---

[3] The Complaint does not describe any prior teeth extractions.

3

medical reasons. I am told I need to wait until I'm home to fix my teeth that are fixable and to get dentures to help eat my food." (*Id.* at 27.)

Crawford also included copies of five sick call request forms reflecting that he sought care for an infection in his mouth and for pain, (*id.* at 29-33), two of which pre-date January 2022, when Crawford alleges the events giving rise to his claims began, (*compare* Compl. at 30, 31 *with id.* 7, 11). He also provided documents that appear to have been generated by PrimeCare, which suggest that he refused dental treatment and/or appointments on September 9, 2021 — before the events giving rise to his claims began — and on March 30, 2023. (*Id.* at 34-36.) Crawford's hand-written notations on those documents reflect his contention that he never refused treatment and that, rather, he did not appear at these appointments because he was not told about them and was not given "a chance to go." (*Id.*) He appears to have included these documents in support of his allegations that there are customs at CCP of "telling medical [that inmates in protective custody] refuse[d] treatment when [the inmate was not] aware of the appointments," a "custom of refusing treatment and altering doctor notes to avoid grievance and civil action," and a custom allegedly maintained by Defendants Kneal and Gaffney to schedule medical visits even though no treatment is given. (*Id.* at 9-10.)

## II.     PROCEDURAL HISTORY

In a March 12, 2024 Order, the Court granted Crawford leave to proceed *in forma pauperis* and directed service of his Complaint pursuant to Federal Rule of Civil Procedure 4(c)(3) and 28 U.S.C. § 1915(d). (ECF No. 5.) Service was made on all Defendants except for Kevin Gaffney.[4]

---

[4] According to counsel for PrimeCare, Gaffney has not been employed by PrimeCare since September 13, 2021. (ECF No. 21-1 at 1.) Counsel for PrimeCare acknowledged, however, that service has been accepted for the remaining PrimeCare Defendants. (*Id.*)

4

Defendants County of Chester and Deputy Warden Roberts ("CCP Defendants") filed a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  (ECF No. 14.)  They argue that Crawford failed to allege deliberate indifference because he "received treatment for his dental/tooth pain" — *i.e.*, he was seen by Dr. Zarkoski and Dr. Kneal, who recommended that he have two teeth extracted, and received Tylenol and antibiotics for his mouth pain and infection — and simply disagrees with the care he received.  (ECF No. 14-2 at 9-10.)  They also argue that Crawford has not pled a serious medical need because, at most, he alleged that his dental issues caused discomfort while eating, and "has not pled that he was diagnosed by a physician or dentist as needing dentures, nor has he pled that the denial of dentures would create some type of long-term disability or permanent loss."  (*Id.* at 10.)  Deputy Warden Roberts argues that the claims against him should be dismissed because he was not personally involved in the relevant events and, regardless, is entitled to qualified immunity.  (*Id.* at 11-13.)  The CCP Defendants further allege that Crawford has failed to plausibly allege a claim for municipal liability and contend that Crawford mischaracterizes the relevant policy.[5]  (*Id* at 13-14; *id.* at 4 n.1.)

Defendants PrimeCare, Murphy, and Drs. Kneal and Zarkoski (the "PrimeCare Defendants") also moved to dismiss the claims against them.  (ECF No. 21.)  First, the PrimeCare Defendants allege that Crawford cannot state a claim against Murphy based solely on her review of grievances.  (ECF No. 21-1 at 8.)  Second, they allege that Crawford failed to state

---

[5] As an exhibit to their motion, the CCP Defendants attached a copy of CCP's policy for "oral care," which states, among other things, that "[d]ental treatments, including but not limited to extractions, are provided in accordance with appropriate standards of dental care" and that "[d]ental prostheses shall be supplied when the health of the patient would otherwise be adversely affected, as determined by the dentist."  (ECF No. 14-5 at 3.)  The policy also states that "[r]outine fillings and extractions are available to all patients."  (*Id.*)

5

a claim against Drs. Kneal and Zarkoski because he "provides very little facts as to what conditions they evaluated" and that, in any event, it is obvious Crawford received pain medications, antibiotics, and was offered extraction and simply disagrees with the treatment provided or offered.  (*Id.*)  Finally, they allege that Crawford cannot state a claim against PrimeCare because there is no underlying constitutional violation and because PrimeCare's policies are all consistent with National Commission on Correctional Health Care ("NCCHC") standards.  (*Id.* at 10.)

In response to the Defendants' Motions, Crawford alleges that he has stated a deliberate indifference claim because he "claims he suffers severe pain, and issues due to his lack of teeth, and no dentures, but the Defendants use a custom so often used and [widely] accepted . . . when they refuse all access to dentures on a blanket basis" regardless of their written policy.  (ECF No. 27 at 8.)  He contends that dental needs can rise to the level of serious, especially if care is delayed as he alleges it was in his case.  (*See id.* at 15-18.)  He also claims that he has pled municipal liability on a failure to train, supervise, or discipline theory — even though no such theory is pled in the Complaint, as the CCP Defendants point out in their reply, (ECF No. 29 at 2) —  as well as based on custom.  (ECF No. 27 at 18-20.)

### III.   STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555.) "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).

In resolving a Rule 12(b)(6) motion, "a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). To determine whether a complaint filed by a *pro se* litigant states a claim, a court must accept the facts alleged as true, draw all reasonable inferences in favor of the plaintiff, and "ask only whether that complaint, liberally construed contains facts sufficient to state a plausible . . . claim." *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021) (cleaned up); *see also Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (*pro se* filings are construed liberally). Additionally, since Crawford is proceeding *in forma pauperis*, the Court may independently screen his Complaint and dismiss it "at any time" pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) if, among other things, it fails to state a claim. *Brown v. Sage*, 941 F.3d 655, 662 (3d Cir. 2019) (*en banc*) ("To repeat, the statute requires a court to dismiss an IFP complaint 'at any time' if it determines that the complaint is frivolous, malicious, or fails to state a claim."). The standard under this screening provision is the same standard that governs a dismissal under Rule 12(b)(6). *See Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999).

## IV.     APPLICABLE LAW

Crawford brings his constitutional claims pursuant to 42 U.S.C. § 1983.  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  To establish individual liability in a § 1983 action, the personal involvement of each defendant in the alleged constitutional violation is a required element, and, therefore, a plaintiff must allege how each individual defendant was involved in the events and occurrences giving rise to the claims.  *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998).  Additionally, "[s]uits against high-level government officials must satisfy the general requirements for supervisory liability." *Wharton v. Danberg*, 854 F.3d 234, 243 (3d Cir. 2017).  A supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm."  *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *reversed on other grounds by Taylor v. Barkes*, 575 U.S. 822 (2015).  (quoting *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)).  "[A] supervisor may [also] be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct."  *Id*.

To plead a § 1983 claim against a municipality, such as Chester County, or a medical contractor who provides medical services at a county prison, such as Prime Care, a plaintiff must allege that the municipality's policy or custom caused the violation of his constitutional rights. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *see also Natale v.*

8

*Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (applying *Monell* to claims against medical contractor).  "To satisfy the pleading standard, [the plaintiff] must . . . specify what exactly that custom or policy was."  *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009).  "'Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'"  *Estate of Roman v. City of Newark*, 914 F.3d 789, 798 (3d Cir. 2019) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990)).  "'Custom, on the other hand, can be proven by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law.'"  *Id.* (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)).

To plead a claim for municipal liability, "[a] plaintiff must also allege that the policy or custom was the 'proximate cause' of his injuries."  *Id.* (citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).  This can be done "by demonstrating an 'affirmative link' between the policy or custom and the particular constitutional violation" alleged.  *Id.* (quoting *Bielevicz*, 915 F.2d at 850).  For a custom to be the proximate cause of an injury, a plaintiff must establish that the defendant "had knowledge of similar unlawful conduct in the past, failed to take precautions against future violations, and that its failure, at least in part, led to [the plaintiffs'] injury."  *Id.* (internal quotations and alterations omitted).  A plaintiff may also state a basis for municipal liability by "alleging failure-to-supervise, train, or discipline . . . [and alleging facts showing] that said failure amounts to deliberate indifference to the constitutional rights of those affected."  *Forrest v. Parry*, 930 F.3d 93, 106 (3d Cir. 2019).

To state a Fourteenth Amendment claim based on the failure to provide medical care, which is what Crawford alleges here, a pretrial detainee must allege facts reflecting that prison

9

officials were deliberately indifferent to his serious medical needs.[6] *See Farmer v. Brennan*, 511 U.S. 825, 835 (1994); *Moore v. Luffey*, 767 F. App'x 335, 340 n.2 (3d Cir. 2019) (holding that the standard under the Eighth Amendment and Fourteenth Amendment for claims related to a prisoner's medical needs is essentially the same for purposes of the analysis). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). "In certain circumstances, the need for dental care combined with the effects of not receiving it may give rise to a sufficiently serious medical need to show objectively a substantial risk of serious harm." *Farrow v. West*, 320 F.3d 1235, 1243-44 (11th Cir. 2003) (citing *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir. 1989) and *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)); *see also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) ("Tooth decay can constitute an objectively serious medical condition because of pain and the risk of infection.").

A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. In the context of correctional medical care, deliberate indifference is properly alleged "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving

---

[6] Since Crawford is a pretrial detainee, his claims are governed by the Due Process Clause of the Fourteenth Amendment. *Hubbard v. Taylor*, 399 F.3d 150, 165 (3d Cir. 2005).

needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  In contrast, allegations of medical malpractice and mere disagreement regarding proper medical treatment are insufficient to establish a constitutional violation, *see Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004), and "[w]here a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*).  Further, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with . . . deliberate indifference." *Spruill*, 372 F.3d at 236.

## V.    ANALYSIS

At issue here is whether Crawford has adequately alleged a serious medical need as a result of his dental issues, and whether he has alleged sufficient facts to support an inference that any of the Defendants were deliberately indifferent to that need, either on an individual basis or, in the case of Chester County and PrimeCare, as a result of a policy or custom.[7]  At the pleading stage, Crawford has adequately alleged a serious medical need in connection with his dental

---

[7] Crawford sued the individual Defendants in their individual and official capacities.  Suing an officer or employee in his official capacity is essentially a means of pleading claims against an entity of which the officer or employee is an agent.  *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985).  Since Crawford's official capacity claims against the individual Defendants are therefore duplicative of his claims against the entity Defendants, the Court will dismiss them. *See Stanek v. St. Charles Cmty. Unit Sch. Dist. No. 303*, 783 F.3d 634, 644 (7th Cir. 2015) ("The district court correctly dismissed these defendants in their official capacity because the Staneks also sued the District."); *Cuvo v. De Biasi*, 169 F. App'x 688, 693 (3d Cir. 2006) ("Because Cuvo is suing Palmer Township, the suit against the officers in their official capacities is redundant."); *Love-Lane v. Martin*, 355 F.3d 766, 783 (4th Cir. 2004) ("The district court correctly held that the § 1983 claim against Martin in his official capacity as Superintendent is essentially a claim against the Board and thus should be dismissed as duplicative.").

issues. Specifically, Crawford contends that he has two cavities that cause "pain and discomfort while eating," and that, prior to his incarceration, he had an appointment with a "dentures specialist" to "start his 'dental dentures' process and cavity repair," which supports an inference that a dentist prescribed cavity repair and dentures as a course of treatment.[8] (*See* Compl. at 12.) Crawford also alleges that, in addition to causing pain while eating, his dental issues have caused him to lose weight and have resulted in "ongoing bleeding and swollen gums as a few teeth dig into his gums . . . when eating meals," and, at least at one point, an infection that was treated with antibiotics. (*Id.* at 12-15.) According to Crawford, he has been suffering from these dental issues for approximately thirty-five months. (*Id.*) Together, these allegations plead a serious medical need for purposes of Crawford's constitutional claim. *See Board v. Farnham*, 394 F.3d 469, 480 (7th Cir. 2005) (observing that several courts have "held that dental pain accompanied by various degrees of attenuated medical harm may constitute an objectively serious medical need" and citing cases); *Hunt*, 865 F.2d at 200 (prisoner stated claim for deliberate indifference where he "alleged that prison officials were aware that the loss of his dentures was causing him severe pain and resulting in permanent damage to his teeth"); *see also Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008) (*per curiam*) (concluding that evidence of inmate's "dental problems presented a genuine issue of material fact as to whether he had a serious medical need" in light of five month delay in receiving prescribed dentures to address teeth that were cutting into his gums, causing difficulty eating and severe soreness and swelling in gums); *Taylor v. Cnty. of Chester*, No. 23-4031, 2023 WL 7329497, at *6 (E.D. Pa. Nov. 6, 2023) ("Taylor has

---

[8] While the CCP Defendants assert that Crawford "has not pled that he was diagnosed by a physician or dentist as needing dentures," (ECF No. 14-2 at 10), this assertion ignores Crawford's allegation that he was so diagnosed by a non-prison dentist prior to his incarceration.

alleged serious medical needs in the form of his cavities, which caused him pain and sensitivity, and interfered with his ability to eat and drink."); *Oke v. Biggins*, No. 18-214, 2019 WL 6702142, at *3 (W.D. Pa. Nov. 15, 2019), *report and recommendation adopted,* No. 18-214, 2019 WL 6701455 (W.D. Pa. Dec. 9, 2019) (plaintiff alleged a serious medical need when he described cavity that went untreated for at least 28 days, "caused him to experience severe pain in his face, jaw, and neck," and "interfered with his ability to eat, drink, and sleep"). Crawford's failure to allege that "the denial of dentures would create some type of long-term disability or permanent loss," as asserted by the CCP Defendants, (*see* ECF No. 14-2 at 10), is irrelevant because it is not necessary to sustain permanent loss or disability to allege a serious medical need. *See generally Lanzaro*, 834 F.2d at 347 (explaining various means by which courts determine whether a medical need is serious, disability and permanent loss being one means among several).

Crawford has also pled sufficient facts to support an inference that Drs. Zarkoski and Kneal — the dentists providing care at CCP — were deliberately indifferent to his dental needs by enforcing a policy or custom governing dental care at CCP. Crawford alleges that he saw Drs. Zarkoski and Kneal for his dental issues and that they informed him on April 27, 2023 that they would need to extract two teeth because "policy will not allow them to offer any 'restorative dental treatment' such as fillings, root canals or corrective care . . . even where they are the most appropriate and least invasive treatments." (Compl. at 13.) When read as a whole, the Complaint supports a plausible inference that Crawford was prescribed cavity repair and dentures by a dentist prior to his incarceration, but that these treatments were not available to him at CCP because of a policy or custom at CCP that limits dental treatment to extracting teeth. The CCP Defendants and PrimeCare Defendants argue that Crawford's Complaint and exhibits

13

reflect that he received treatment for his dental pain in the form of antibiotics and a recommendation for tooth extraction, a path of treatment with which he simply disagrees. (*See* ECF No. 14-2 at 9-10; ECF No. 21-1 at 8.) While the Defendants are correct that a prisoner's disagreement with the care he receives is an insufficient basis upon which to rest a deliberate indifference claim, this argument mischaracterizes Crawford's claims. The Court understands Crawford to be alleging that the dentists' recommendation for tooth extraction was based not on their medical judgment or the standard of care but, rather, on an understanding that extraction is the only treatment available for inmates with dental issues as a matter of policy or custom at CCP.

The CCP Defendants and PrimeCare Defendants also argue that Crawford misrepresents the relevant policy and that the policy is consistent with correctional standards of care. (*See* ECF No. 14-5; ECF No. 21-1 at 10.) Whether that is so, however, is a factual dispute best borne out through discovery and resolved via summary judgment or trial. Further, reading Crawford's allegations liberally and taking all inferences in his favor, the Court understands Crawford to be alleging that, whatever the written policy may be, the actual policy or custom at CCP is to provide care in a manner that essentially limits dental treatment to "extraction only" when other care is more appropriate, including when another course of treatment was prescribed by a dentist. Accordingly, Crawford has adequately alleged a basis for a deliberate indifference claim against the dentists, the County, and PrimeCare.[9] *See Berry*, 604 F.3d at 441 ("[A] doctor's choice of

---

[9] The Defendants are correct, however, that the Complaint does not adequately allege or advance a *Monell* claim based on a failure to train theory. Nor has Crawford adequately alleged any other policy or custom sufficient to support a plausible claim other than his allegation regarding the "extraction only" policy governing available dental care. His conclusory assertion that the Defendants maintain a policy of altering records to deny treatment is not supported by sufficient factual allegations and, to the contrary, appears to be premised solely on two instances in a period of eighteen months when records showed (allegedly incorrectly) that Crawford refused

the 'easier and less efficacious treatment' for an objectively serious medical condition can still amount to deliberate indifference for purposes of the Eighth Amendment."); *Taylor*, 2023 WL 7329497, at *6 (concluding, upon review of a complaint filed by another inmate at CCP, that the inmate stated a deliberate indifference claim with regard to his cavities because he "was told by the dentist that the only option was to pull his tooth because, as a matter of policy, there are no options for fillings or a root canal even if that is the correct treatment" (internal quotations omitted)); *see also Pearson v. Prison Health Serv.*, 850 F.3d 526, 538 (3d Cir. 2017) (deliberate indifference can be found where prison officials "prevent an inmate from receiving recommended treatment for serious medical needs"); *Ebert v. Prime Care Med. Inc.*, 602 F. App'x 61, 64 (3d Cir. 2015) (*per curiam*) (remanding to permit inmate to amend deliberate indifference claim where his exhibits suggested he may have been denied a dental plate because the dentist stated he did "not do plates," while noting that the fact the inmate "was seen by medical professionals does not necessarily preclude a finding of deliberate indifference").

      Crawford has not, however, stated a plausible claim against Defendants Roberts and Murphy because he has failed to adequately allege how these Defendants were personally involved in the claimed constitutional violations. A plaintiff must plead "participation or actual knowledge and acquiescence[] . . . with appropriate particularity." *Rode,* 845 F.2d at 1207. The basis for Crawford's claims against these Defendants appears to be that he either directed grievances to them and/or generally "alerted" them to the issues with his dental care. (Compl. at

---

dental treatment. *See Phillips v. Northampton Co., P.A.*, 687 F. App'x 129, 132 (3d Cir. 2017) (*per curiam*) (affirming dismissal of complaint where "[o]ther than some wholly conclusory and highly generalized assertions about unspecified patterns of misconduct, [plaintiff] pleaded no facts to support the existence of any policy, custom, or practice beyond those involving his own [experiences]."); *Groman v. Twp. of Manalapan*, 47 F.3d 628, 637 (3d Cir. 1995) (noting that "vague assertions" of a policy or custom are insufficient to impose liability).

12-13.) However, a prison officials' participation in the grievance process or being on the receiving end of a prisoner's letters is generally an insufficient basis upon which to rest personal involvement in the underlying events. *See Curtis v. Wetzel*, 763 F. App'x 259, 263 (3d Cir. 2019) (*per curiam*) ("The District Court properly determined that Defendants Wenerowicz, Lewis, and Shaylor – who participated only in the denial of Curtis' grievances – lacked the requisite personal involvement [in the conduct at issue]."); *Burk v. Crowe*, No. 19-5792, 2020 WL 42758, at *4 (E.D. Pa. Jan. 3, 2020) (plaintiff's "general allegation that he 'wrote to' Crowe, Cassidy, Budd, and Lagana 'when this happen[ed]' is too vague and undeveloped to state a plausible basis for liability against these individuals"). That is particularly so in the case of non-medical Defendants such as Roberts. *See Diaz v. Warden Lewisburg USP*, 630 F. App'x 148, 151 (3d Cir. 2015) (*per curiam*) (prison officials who were administrators and who "are not themselves physicians" were not liable for deliberate indifference where plaintiff could not establish that their "involvement in the matter consisted of anything more than, at most, receiving letters from Diaz expressing his dissatisfaction with the medical care he was receiving"); *see also Berry*, 604 F.3d at 440 ("[T]he law encourages non-medical security and administrative personnel at jails and prisons to defer to the professional medical judgments of the physicians and nurses treating the prisoners in their care without fear of liability for doing so"). In sum, since there are no specific factual allegations from which the Court could infer that either Roberts or Murphy played any role in managing Crawford's dental care or in establishing or enforcing the dental policy of which he complains, the Court will dismiss Crawford's claims against these Defendants.

## VI.     CONCLUSION

For the foregoing reasons, the Court will grant the Defendants Motions in part and deny them in part.  The Motions are denied as to Crawford's claims for deliberate indifference to his dental needs against the County of Chester, PrimeCare and Drs. Kneal and Zarkoski in their individual capacities based on the alleged "extraction only" policy or custom at CCP.  The Motions are granted as to all other claims.   It is unclear whether Crawford can cure the defects in the dismissed claims, however, the Court will give him an opportunity to file an amended complaint prior to moving forward with discovery.   Further, if Crawford seeks to pursue any claims against Defendant Gaffney, whether in his Complaint or in any amended complaint, he must provide the Court with a proper address where Gaffney can be served.

**BY THE COURT:**

*/s/ Joseph F. Leeson, Jr.*
**JOSEPH F. LEESON, JR.
United States District Judge**