**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

SEAN CRAWFORD,              :
           Plaintiff,    :
                     :
      v.                    :       No. 2:24-cv-0798
                     :
COUNTY OF CHESTER, PRIMECARE     :
MEDICAL, INC., DAVID KNEAL, and  :
MARTIN ZARKOSKI,            :
           Defendants.   :

## O P I N I O N
**County of Chester's Motion for Summary Judgment, ECF No. 61 – Granted**
**Primecare Defendants' Motion for Summary Judgment, ECF No. 62 - Granted**

**Joseph F. Leeson, Jr.**                             **November 20, 2025**
**United States District Judge**

## I.    INTRODUCTION

Plaintiff Sean Crawford, *pro se*, brings this action pursuant to 42 U.S.C. § 1983 against

Defendants, the County of Chester, Pennsylvania ("County of Chester"), PrimeCare Medical,

Inc. ("PrimeCare"), David Kneal, DMD, and Martin Zarkoski, DMD (collectively, the

"PrimeCare Defendants"), alleging a violation of his right to adequate medical care (more

narrowly, dental care), while incarcerated at Chester County Prison. Currently before the Court

are two Motions for Summary Judgment, one from the County of Chester and one from the

PrimeCare Defendants. For the reasons stated below, Defendants' Motions for Summary

Judgment are both granted.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Parties

*Pro se* Plaintiff, Sean Crawford, is an inmate at SCI–Camp Hill, however the facts of his

claims relate to Crawford's time at Chester County Prison. *See* Compl., ECF No. 3. Defendants

David Kneal, DMD, and Martin Zarkoski, DMD, were dentists employed by PrimeCare Medical, Inc., which was contracted to provide medical and dental services to Chester County prisoners and detainees. *See id.* at 9-10, 12-14;[1] Chester SOF, ECF No. 61-3, at ¶ 5. As of the date of this Opinion, the County of Chester, PrimeCare, Dr. Kneal, and Dr. Zarkoski are the only four remaining defendants in this case.

### B. Factual Background[2]

Crawford was incarcerated at Chester County Prison from January 21, 2020 until at least February 22, 2024.[3] *See* Chester SOF at ¶¶ 1-2; *see also* PrimeCare SOF, ECF No. 62-1, at ¶ 1. Medical and dental care for all pretrial detainees and prisoners at Chester County Prison is provided by PrimeCare and its hired medical professionals. Chester SOF at ¶ 6. The County of Chester and PrimeCare maintain treatment policies and procedures at Chester County Prison

---

[1] Any reference to a page number in the Complaint, ECF No. 3, shall be understood as a reference to the document page number for the ECF filing, and not to the number produced at the bottom of any page of the *pro se* prisoner complaint form, since Crawford interposes handwritten pages among the form pages in his Complaint, and the numbering throughout the document is inconsistent.

[2] Except where otherwise indicated, the facts in this section are not in genuine dispute. The County of Chester and the PrimeCare Defendants filed statements of undisputed material facts along with their Motions for Summary Judgment. Crawford, however, failed to file a statement of disputed material facts in response to either of them. Defendants' statements will therefore be treated as admitted insofar as they are not contradicted by the allegations in Crawford's Complaint. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (explaining that *pro se* pleadings should be "[held] to less stringent standards than formal pleadings drafted by lawyers"); *see generally* Fed. R. Civ. P. 56(e)(3); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990) (explaining that in typical cases, where a party fails to oppose a summary judgment motion, the facts may be deemed undisputed). References to facts in this section will be made via citation to the County of Chester's Statement of Undisputed Facts ("Chester SOF"), ECF No. 61-3, and the PrimeCare Defendants' Statement of Undisputed Facts ("PrimeCare SOF"), ECF No. 62-1, appended to the Motions for Summary Judgment. Facts are reproduced herein to the extent they are consistent across both motions and not inconsistent with the Complaint; to the extent any facts may differ, the distinction will be highlighted.

[3] At the time of filing his Complaint on February 22, 2024, Crawford was incarcerated at Chester County Prison. *See* ECF No. 3. On July 22, 2025, the County of Chester notified the Court that Crawford had been transferred from Chester County Prison to SCI-Camp Hill, to serve out his criminal sentence. *See* ECF No. 64. Crawford's exact date of transfer is unknown.

which coincide with National Commission on Correctional Health Care ("NCCHC") standards.[4]
*Id.* at ¶¶ 8-9.

### i. Dental Exams Recorded by County of Chester and PrimeCare Defendants

On January 21, 2020, Crawford received an initial screening examination, during which he reported that his last visit to the dentist was in 2015. *Id.* at ¶¶ 11-12. The Certified Medical Assistant performing the exam noted that the condition of Crawford's gums, upper teeth, and lower teeth were "[p]oor (decay, missing, broken)." *Id.* at ¶ 16. Crawford was given educational materials on dental hygiene and how to request a sick call or report a medical, dental, or emotional concern to PrimeCare staff. *Id.* at ¶¶ 14-15.

On December 16, 2020, Crawford was given a dental examination by David Kneal, DMD, who noted that several of Crawford's teeth (Nos. 1-4, 13, 15-18, 31-32) were missing, but Crawford reported no pain. *See id.* at ¶¶ 17-19; PrimeCare SOF at ¶¶ 2-4 (adding that Crawford had "mild to moderate generalized periodontal disease" and that Dr. Kneal did not recommend treatment at this time). On March 24, 2021, Crawford again saw Dr. Kneal for a dental examination. Chester SOF at ¶ 20; PrimeCare SOF at ¶ 5. Dr. Kneal noted a fracture on tooth #19, prescribed amoxicillin, and offered to extract the tooth, but no extraction was performed.[5] Chester SOF at ¶¶ 21-22; *see* PrimeCare SOF at ¶¶ 6-9. On April 21, 2021, Dr. Kneal evaluated Crawford again, this time in response to Crawford's complaints of tooth pain (for tooth #5) and swelling.[6] Chester SOF at ¶ 23; PrimeCare SOF at ¶¶ 11-13 (adding that Crawford had "[s]ome

---

[4] Policy No. CHCP-J-E-06 is the oral and dental care policy maintained by the County and PrimeCare. Chester SOF at ¶ 10.

[5] The County of Chester alleges that Crawford refused this extraction, "indicat[ing] that he wanted to wait until post-release." *Id.* at ¶¶ 21-22. Crawford, however, states in his initial pleading that he "never refused dental care in any form relevant to this complaint." Compl. at 9.

[6] The PrimeCare Defendants indicate that these complaints were memorialized in a Sick Call Request, dated April 17, 2021. PrimeCare SOF at ¶ 10.

decay," "slight buccal swelling," and "caries and pulpitis with tooth 5"). Dr. Kneal instructed

Crawford to continue with his current medication regimen, and urged him to take his amoxicillin

as prescribed. Chester SOF at ¶ 24; PrimeCare SOF at ¶¶ 14-15. On August 18, 2021, Crawford

again went to Dr. Kneal with complaints of tooth pain and swelling.[7] Chester SOF at ¶ 25;

PrimeCare SOF at ¶¶ 17-18. After Crawford informed him that the prescribed medication was

helping, Dr. Kneal instructed Crawford to continue with his current medication regimen, and

indicated that another prescription could be added if there was no further improvement. Chester

SOF at ¶ 26; *see* PrimeCare SOF at ¶¶ 19-24. The PrimeCare Defendants recall that "[a]

composite filling was installed" during this visit.[8] PrimeCare SOF at ¶ 20.

     In mid-September, Crawford requested that the painful tooth (#5) be extracted, and Dr.

Kneal evaluated him again on September 22, 2021. Chester SOF at ¶ 27; PrimeCare SOF at

¶¶ 25-26. Dr. Kneal "noted a fracture and caries with a chronic fistula with tooth 5." PrimeCare

SOF at ¶ 27. On September 30, 2021, Crawford signed a Consent for Oral Surgery Form and

Nathan Kalteski, DDS, extracted tooth #5. Chester SOF at ¶ 28; *see* PrimeCare SOF at ¶ 29. On

January 5, 2022, Dr. Kneal again evaluated Crawford,[9] and noted which teeth were missing,

including tooth #5, the recent extraction. Chester SOF at ¶¶ 29-30; *see* PrimeCare SOF at ¶¶ 31-

34. Crawford was later examined by a registered nurse on October 21, 2022, following additional

---

[7]    The PrimeCare Defendants indicate that these complaints were memorialized in a Sick
Call Request, dated August 16, 2021. *Id.* at ¶ 16.

[8]    The PrimeCare Defendants also allege that on this date, Crawford refused an extraction
when offered by Dr. Kneal. *Id.* at ¶ 22. Crawford's Complaint, however, states that he "never
refused dental care in any form," Compl. at 9, but rather, that he was refused his preferred
treatment of dentures, *id.* at 12-14.

[9]    Defendants differ in their allegations of Crawford's pain levels at the time of this dental
examination. The County of Chester says that Crawford reported no dental pain at this visit.
Chester SOF at ¶ 31. The PrimeCare Defendants say that Crawford "had some pain with tooth
15," PrimeCare SOF at ¶ 32, but that "he wanted to wait to take [an] antibiotic until it was
needed," *id.* at ¶ 33.

complaints of tooth pain. Chester SOF at ¶ 32. On October 26, 2022, Crawford was evaluated by Dr. Kneal, who noted "large decay" on teeth Nos. 19 and 20, prescribed Clindamycin, and "discussed other treatment options" with him. *Id.* at ¶¶ 33-34; *see* PrimeCare SOF at ¶¶ 36-40 (adding that Dr. Kneal declared tooth No. 19 to be "non-restorable," and that tooth No. 20 had caries and was "possibly" non-restorable).

On December 27, 2022, Crawford was examined by another registered nurse, following complaints of tooth pain and swelling,[10] and was prescribed a saline rinse. Chester SOF at ¶ 35; PrimeCare SOF at ¶¶ 42-43. On March 30, 2023, Crawford had a scheduled dental examination with Martin Zarkoski, DMD, but did not attend.[11] Chester SOF at ¶ 36; PrimeCare SOF at ¶ 44. On April 27, 2023, Crawford was examined by Dr. Zarkoski, who again noted which teeth were missing, and recommended that teeth #19 and #20 also be extracted.[12] Chester SOF at ¶¶ 37-39; PrimeCare SOF at ¶¶ 46-48. Crawford declined because he "was not ready at this time." Chester SOF at ¶ 39; *see* PrimeCare SOF at ¶ 48 (adding that Dr. Zarkoski also prescribed an antibiotic).

---

[10]    The PrimeCare Defendants allege that Crawford submitted a Sick Call Request on December 23, 2022, complaining of pain and difficulty eating. PrimeCare SOF at ¶ 41.

[11]    Attached to the Complaint is a copy of a "Refusal to Consent to Treatment Form" by PrimeCare, signed by Martin Zarkoski and dated March 30, 2023, which indicates that Crawford was "called to dental today for dental annual exam" but that he "refused to report" and "refused treatment." Compl. at 34; *see also* Chester SOF at ¶ 36 and PrimeCare SOF at ¶ 44 (stating that Crawford "refused" to attend). Crawford alleges that he was not aware of this appointment and that Defendants had a custom of "telling medical the inmate refuses treatment" without notifying the inmate of his scheduled appointments. *Id.* at 9-10; *see also id.* at 34 ("FALSE. I never signed this because no one told me about the appointment!").

[12]    Crawford alleges that at the April 27, 2023 appointment, Dr. Kneal and Dr. Zarkoski informed him that extractions were the only form of treatment available, because "policy will not allow them to offer any 'restorative dental treatment' such as fillings, root canals or corrective care of dental caries." *Id.* at 13. Defendants deny the existence of any such policy. *See* Chester Br. at 15-17; PrimeCare Br. at 16-18.

Months later, Crawford still experienced tooth pain. Chester SOF at ¶ 40; PrimeCare SOF at ¶ 51. On December 27, 2023, he underwent another dental examination,[13] where it was noted that Crawford's teeth, Nos. 14, 19, and 20, were "severely decayed" and "not restorable." Chester SOF at ¶¶ 40-41; PrimeCare SOF at ¶¶ 50-53. Crawford declined to discuss teeth extractions and was again prescribed amoxicillin. Chester SOF at ¶ 42; PrimeCare SOF at ¶¶ 56-57.[14] In March of 2024, Crawford still reported tooth pain and difficulty chewing, so a registered nurse prescribed him ibuprofen. Chester SOF at ¶ 43; PrimeCare SOF at ¶¶ 64-65. The PrimeCare Defendants allege that Dr. Kneal again prescribed amoxicillin at this time, but that Crawford did "not tak[e] the prescribed pain medication as directed." PrimeCare SOF at ¶¶ 66-71. On April 8, 2024, Crawford saw Dr. Kneal for a dental examination.[15] Chester SOF at ¶¶ 44, 46. Dr. Kneal noted which of Crawford's teeth were missing, and made a note that Crawford was not interested in discussing Dr. Kneal's findings and recommendations." *Id.* at ¶¶ 45-46. No additional medication or treatment was prescribed on this date. PrimeCare SOF at ¶ 78.

---

[13]     The County of Chester alleges that Crawford was evaluated by Dr. Kalteski on December 27, 2023. Chester SOF at ¶¶ 40-41. The PrimeCare Defendants allege that Crawford was evaluated by Dr. Zarkoski on this date. PrimeCare SOF at ¶ 50.

[14]     The PrimeCare Defendants also allege that a "composite filling was installed" during Crawford's December 27, 2023 visit, *id.* at ¶ 55, and that afterward, Crawford "did not take the amoxicillin as prescribed," taking "0% of the morning dose of the antibiotic," because he was generally "non compliant taking his medications despite the fact he had been counseled on multiple occasions of the importance of taking his medications as prescribed," *id.* at ¶¶ 58-60.

[15]     The County of Chester alleges that, during the April 8, 2024 visit, Crawford indicated no current dental issues. Chester SOF at ¶¶ 44, 46. The PrimeCare Defendants allege that at this visit, Crawford complained of irritation in his mouth and asserted that "part of tooth 5 was not removed in its entirety," PrimeCare SOF at ¶ 74, but that Dr. Kneal "informed [Crawford] that the entire tooth was extracted and that the area [Crawford] complained of was bone," *id.* at ¶ 75. Dr. Kneal recalls that Crawford did not listen to him and had generally "poor dental hygiene." *Id.* at ¶¶ 73, 76.

### ii. Further Dental Treatment Recorded by PrimeCare Defendants

On May 25, 2024, Crawford was evaluated by a licensed practical nurse for "complaints of right upper 'bone' 'tooth' 'growth' on his gum, and a left upper broken or missing filling." *Id.* at ¶ 80. Soon after, Dr. Kneal prescribed acetaminophen and amoxicillin. *Id.* at ¶ 82. Crawford was examined by Dr. Kneal again on June 10, 2024, complaining "that he had a 'bump' on his right upper gum, and he questioned if the bump was half a tooth." *Id.* at ¶ 88. Dr. Kneal noted caries and "large decay in tooth 15," as well as "buccal swelling in tooth 4 area." *Id.* at ¶¶ 89-91. "An x-ray was taken of the area at teeth 4 and 5," showing a "complete removal of tooth 5, but a possible root or entire tooth in tooth 4 area." *Id.* at ¶ 94. Dr. Kneal explained that it could be a "supernumerary tooth that was erupting," and arranged for Crawford to have an outside consultation with an oral surgeon. *Id.* at ¶¶ 95-96. Dr. Kneal also prescribed pain medication and "placed a temporary filling in tooth 15." *Id.* at ¶ 92. Crawford then underwent an alveoplasty, performed by Oral Surgery Associates of Chester County, on July 16, 2024, after which the oral surgeon prescribed Tylenol and Motrin, as needed for pain. *Id.* at ¶¶ 97-99.

On December 13, 2024, Crawford was evaluated by a licensed practical nurse following complaints of pain in his mouth, and was prescribed acetaminophen and ibuprofen as well as salt water rinses. *Id.* at ¶¶ 100-104. Crawford was then evaluated by non-party Kenneth Martin, DMD, on January 6, 2025, who noted that Crawford needed "root tips in the lower left near teeth 19 and 20 removed," but Crawford declined that treatment option. *Id.* at ¶¶ 106-109. Crawford saw Dr. Martin again on January 17, 2025, after complaining of "tolerable" mouth pain, and was prescribed Motrin. *Id.* at ¶¶ 110-13. Crawford was again assessed by Dr. Martin on March 21, 2025, after reporting that he needed a replacement filling in tooth 15. *Id.* at ¶¶ 114-15. Dr. Martin informed Crawford that a root canal may be necessary to save the tooth, but performed only a filling replacement, per Crawford's request. *Id.* at ¶¶ 116-18.

### iii. Crawford's Prison Grievances

Attached to the Complaint are two Chester County Prison Inmate Grievance Forms, dated January 15, 2022, and April 28, 2023, in which Crawford seeks treatment for dental pain. Compl. at 25-28. Both grievances are marked "copy," and are signed by Crawford, but not by a prison officer. *See id.* The County of Chester claims knowledge of only one prison grievance submitted by Crawford, dated May 21, 2020, which did not concern dental care but instead described "being placed in quarantine by PrimeCare without first receiving a COVID-19 swab test."[16] Chester SOF at ¶ 47. PrimeCare's Health Services Administrator at Chester County Prison, Jennie Widmayer, RN, reviewed Crawford's medical record and confirmed that this is his only grievance on file, and that she is "not aware of Mr. Crawford submitting any grievances concerning his dental care at the Chester County Prison." Widmayer Aff., ECF No. 62-2; *see* PrimeCare SOF at ¶ 136 (referencing Affidavit of Jennie Widmayer, RN).

### C. Procedural History

On February 22, 2024, Crawford filed a Complaint in this Court against the County of Chester, Pennsylvania, PrimeCare Medical, Inc., David Kneal, DMD, and Martin Zarkoski, DMD, and three others who were later terminated.[17] *See* Compl. at 2. The Complaint alleges that the Defendants violated Crawford's Fourteenth Amendment rights to due process and to adequate medical care in prison by showing deliberate indifference to his dental needs, by failing to act in accordance with those dental needs, and by delaying his treatment and denying him

---

[16]    This grievance form was signed by Crawford, and signed and dated by a Compliant Officer on June 4, 2020. *See* ECF No. 61-2 at 191. The County of Chester alleges that Grievance "No. C.C.P.42234-05212020 was found to be untrue by Deputy Warden George R. Roberts and Deputy Warden Roberts' determination was upheld by former Warden D. Edward McFadden." Chester SOF at ¶ 48.

[17]    The three other named defendants were George Roberts, Karen Murphy, and Kevin Gaffney.

dentures, all whilst employing an "extraction-only" policy for inmate dental care. *Id.* at 6, 8-10. On May 21, 2024, the Court dismissed without prejudice all other claims besides Crawford's deliberate indifference claims brought against the County of Chester, PrimeCare, and Drs. Kneal and Zarkoski, and granted leave to amend.[18] *See* ECF Nos. 32-33. On July 30, 2024, the Court again allowed Crawford's deliberate indifference claims to proceed, and dismissed all other claims with prejudice. *See* ECF No. 39. On January 29, 2025, upon consideration of a motion by Crawford, the Court ordered Defendants to respond to certain discovery requests (to the extent a response was not already provided), extended the deadline for the completion of all fact and expert discovery to March 24, 2025, and extended the deadline for filing dispositive motions to April 24, 2025. *See* ECF No. 57.

On April 22, 2025, the County of Chester filed its Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56(c). *See* ECF No. 61; County of Chester's Brief in Support of Motion for Summary Judgment ("Chester Br."), ECF No. 61-4. On April 24, 2025, the PrimeCare Defendants filed their Motion for Summary Judgment. *See* ECF No. 62; PrimeCare Defendants' Brief in Support of their Motion for Summary Judgment ("PrimeCare Br."), ECF No. 62-3. Both Motions for Summary Judgment argue that Crawford failed to exhaust his administrative remedies under the Prison Litigation Reform Act, failed to demonstrate deliberate indifference to a serious medical need, and failed to show municipal liability under *Monell v. Department of Soc. Servs. Of City of New York*, 436 U.S. 658 (1978). *See* Chester Br. at 9-18; PrimeCare Br. at 12-20. On May 13, 2025, the Court ordered Crawford to respond to the Motions for Summary Judgment by June 13, 2025. *See* ECF No. 63. The Court then granted

---

[18]    The Court's May 21, 2024 Order and Opinion also terminated Defendants George Roberts and Karen Murphy. *See* ECF Nos. 32-33. On September 20, 2024, the Court terminated Defendant Kevin Gaffney. *See* ECF No. 43.

Crawford two extensions of time to respond: until August 15, 2025, *see* ECF No. 65, and then until September 5, 2025. *See* ECF No. 68. As of the date of this Opinion, however, Crawford has not responded to either Motion for Summary Judgment. The Court is now ready to render a decision on both motions.

## III.    LEGAL STANDARDS

### A.    Motion for Summary Judgment – Review of Applicable Law

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A disputed fact is "material" if proof of its existence or nonexistence might affect the outcome of the case under applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once such a showing has been made, the non-moving party must go beyond the pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (stating that the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts"). The party opposing the motion must produce evidence to show the existence of every element essential to its case, which it bears the burden of proving at trial, because "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The court must

consider the evidence in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

### i.  When Summary Judgment is Unopposed – Review of Applicable Law

Generally, where a party fails to oppose a summary judgment motion, the facts may be deemed undisputed. *See* Fed. R. Civ. P. 56(e)(3); *Anchorage Assocs. v. Virgin Islands Bd. of Tax Review*, 922 F.2d 168, 175 (3d Cir. 1990). However, the court must still analyze the motion to determine if summary judgment is appropriate, "that is, whether the moving party has shown itself to be entitled to judgment as a matter of law." *See Anchorage Assocs.*, 922 F.2d at 175. "Where the moving party does not have the burden of proof on the relevant issues . . . the district court must determine that the deficiencies in the opponent's evidence designated in or in connection with the motion entitle the moving party to judgment as a matter of law." *Id.* (citing *Celotex*, 477 U.S. at 322-23).

### B.  42 U.S.C. § 1983 Claims – Review of Applicable Law

Section 1983 of Title 42 of the United States Code is the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Moreover, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

"In actions under 42 U.S.C. § 1983, federal courts apply the state's statute of limitations for personal injury." *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998). The statute of limitations for personal injury actions in Pennsylvania is two years. *See id.*; 42 Pa. C.S. § 5524. "A section 1983 cause of action accrues when the plaintiff knew or should have known of the injury upon which its action is based." *Sameric Corp.*, 142 F.3d at 599. "Rule 15(c) can ameliorate the running of the statute of limitations on a claim by making the amended claim relate back to the original, timely filed complaint." *Singletary v. Pennsylvania Dep't of Corr.*, 266 F.3d 186, 193 (3d Cir. 2001). The Rule provides: an "amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). "The rationale of Rule 15(c) is that a party who has been notified of litigation concerning a particular occurrence has been given all the notice that statutes of limitations were intended to provide." *Baldwin Cty. Welcome Ctr. v. Brown*, 466 U.S. 147, 149 n.3 (1984).

### C.    Exhaustion under the Prison Litigation Reform Act – Review of Applicable Law

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies before bringing suit related to the conditions of their confinement. 42 U.S.C. § 1997e(a). *See Woodford v. Ngo*, 548 U.S. 81, 88 (2006) (explaining that proper exhaustion under the PLRA requires a prisoner to "complete the administrative review process in accordance with the applicable procedural rules"). *See also Alexander v. Forr*, No. 3:04-0370, 2005 WL 2416099, at *7 (M.D. Pa. July 26, 2005) ("If a prisoner does not exhaust available administrative remedies, the claims should be dismissed.") (citing *Moscato v. Federal Bureau of*

*Prisons*, 98 F.3d 757, 761-62 (3d Cir. 1996)), *report and recommendation adopted*, No. 3:04-0370, 2005 WL 2416105 (M.D. Pa. Sept. 30, 2005).

An inmate's failure to exhaust these administrative remedies is an affirmative defense that, if brought, must be proven by the defendant. *See Rinaldi v. United States*, 904 F.3d 257, 268 (3d Cir. 2018) (citing *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002). The mandatory exhaustion requirement has one exception, which is that "administrative remedies must be available to the prisoner." *Downey v. Pennsylvania Dep't of Corr.*, 968 F.3d 299, 305 (3d Cir. 2020) (citing *Ross v. Blake*, 578 U.S. 632, 643 (2016)). *See Rinaldi*, 904 F.3d at 268 ("[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him."). "[A]n administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end — with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Ross*, 578 U.S. at 643. "The PLRA requires proper exhaustion, meaning 'complet[ing] the administrative review process in accordance with the applicable procedural rules.'" *Downey*, 968 F.3d at 305 (quoting *Woodford*, 548 U.S. at 88). "A prisoner's failure to follow these procedural rules will result in a procedural default of his claims." *Wong v. Betti*, No. 1:22-cv-01063, 2023 WL 4980211, at *5 (M.D. Pa. Aug. 3, 2023) (citing *Spruill v. Gillis*, 372 F.3d 218, 230-32 (3d Cir. 2004)).

"The purpose of the grievance process is to 'put the prison officials on notice of the persons claimed to be guilty of wrongdoing.'" *White v. Wireman*, No. 16-cv-675, 2018 WL 10456721, at *12 (M.D. Pa. Oct. 15, 2018) (quoting *Spruill*, 372 F.3d at 234), *report and recommendation adopted*, 2020 WL 869863 (M.D. Pa., Feb. 21, 2020). Therefore, to put officials on notice, the relief requested in an inmate's initial grievance must be stated "with

specificity[,]" subject to the applicable prison grievance policy. *See Wright v. Sauers*, No. 13-358, 2017 WL 3731957, at *7 (W.D. Pa. Aug. 30, 2017) (quoting *Spruill*, 372 F.3d at 234). However, for exhaustion purposes, an inmate's grievance need not "perfect[ly] overlap" with the claims in the complaint, so long as there is a "shared factual basis between the two[.]" *See Jackson v. Ivens*, 244 F. App'x 508, 513 (3d Cir. 2007) (citing *Woodford*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance.")).

### D.    Failure to Provide Adequate Medical Care – Review of Applicable Law

Fourteenth Amendment claims of inadequate medical care brought by pretrial detainees are evaluated under the same standard used to evaluate comparable Eighth Amendment claims brought by prisoners. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-104 (1976)). *See also Brahm v. County of Chester*, No. 23-cv-3848, 2024 WL 5147021, at *3 (E.D. Pa. Dec. 17, 2024) (explaining that the Fourteenth Amendment "extends the same protections [as the Eighth Amendment]—if not more—to pretrial detainees"); *Williams v. Nutter*, No. 2:17-cv-00563, 2019 WL 5884477, at *6 (E.D. Pa. Nov. 12, 2019) ("Pretrial detainees may assert Section 1983 claims for inadequate medical care under the Fourteenth Amendment's substantive due process clause.") (citing *Moore v. Luffey*, 767 F. App'x 335, 340 (3d Cir. 2019)). To state an Eighth Amendment claim for inadequate medical care, "a prisoner must make (1) an 'objective' showing that the prisoner's medical needs were sufficiently serious and (2) a 'subjective' showing that the prison official acted with a sufficiently culpable state of mind." *Mitchell v. Gershen*, 466 F. App'x 84, 86 (3d Cir. 2011). In other words, the evidence must show the existence of (1) "a serious medical need" and (2) "acts or omissions by prison officials that indicate deliberate indifference to that need."

*Natale*, 318 F.3d at 582 (citing *Rouse v. Plantier,* 182 F.3d 192, 197 (3d Cir. 1999)).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and

wanton infliction of pain proscribed by the Eighth Amendment." *Estelle*, 429 U.S. at 104

(internal quotation omitted). Such a claim "states a cause of action under § 1983." *Id.* at 105.

A medical need is considered "serious" if it is "one that has been diagnosed by a

physician as requiring treatment or one that is so obvious that a lay person would easily

recognize the necessity for a doctor's attention." *Mitchell*, 466 F. App'x at 86 (quoting

*Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987)). The

consequences of denying care for an inmate's medical need may also be an indicator of its

seriousness. *See id*.

Deliberate indifference occurs when a prison official knows of and disregards an

excessive risk to a prisoner's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). The prison

official "must both be aware of facts from which the inference could be drawn that a substantial

risk of serious harm exists, and he must also draw the inference." *Id.* Examples of deliberate

indifference include "where a prison official knows of a prisoner's need for medical treatment

but intentionally refuses to provide it, delays necessary medical treatment for a non-medical

reason, or prevents a prisoner from receiving needed medical treatment." *Lopez v. Correctional

Med. Servs., Inc.*, 499 F. App'x 142, 146 (3d Cir. 2012) (citing *Rouse*, 182 F.3d at 197); *see also

Rouse*, 182 F.3d at 197 ("Deliberate indifference[] requires obduracy and wantonness . . . which

has been likened to conduct that includes recklessness or a conscious disregard of a serious

risk.'" (cleaned up; citation omitted)). Additionally, the deliberate failure to provide prescribed

medical care, the choice of an ineffective course of treatment in contravention of another

physician's explicit orders, or the choice of an "easier and less efficacious treatment," may

establish deliberate indifference. *Rodriguez v. Smith*, No. 03-cv-3675, 2006 WL 680965, at *13 (E.D. Pa. March 16, 2006) (citation omitted).

Mere allegations of "medical malpractice, negligence, and courses of treatment inconsistent with the desires of the prisoner, though, do not constitute deliberate indifference." *Lopez*, 499 F. App'x at 146; *see Mitchell*, 466 F. App'x at 87; *Lanzaro*, 834 F.2d at 346. Nor does "the refusal to summon the medical specialist of the inmate's choice, perform tests or procedures that the inmate desires, or to explain to the inmate the reason for medical action or inaction" amount to cruel and unusual punishment. *Roman v. Little*, No. 19-cv-5204, 2020 WL 2098096, at *4 (E.D. Pa. April 30, 2020) (citation omitted). Prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and courts are reluctant to second guess those medical judgments, *see Mitchell*, 466 F. App'x at 87; *James v. Pennsylvania Dep't of Corr.*, 230 F. App'x 195, 197–98 (3d Cir. 2007). Thus, an inmate's difference of opinion with his medical provider as to his treatments, without more, does not support a finding of deliberate indifference. *See id.*; *White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("[M]ere disagreements over medical judgment do not state Eighth Amendment claims.").

### E. *Monell* Claims – Review of Applicable Law

"[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. Department of Soc. Servs. Of City of New York*, 436 U.S. 658, 691 (1978) (italics in original). "A plaintiff seeking to hold a municipality liable under section 1983 must demonstrate that the violation of rights was caused by the municipality's policy or custom." *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citing *Monell*, 436

U.S. at 691). The policy or custom must be unconstitutional itself or be "the 'moving force' behind the plaintiff's deprivation of federal rights." *Board of the Cty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 400 (1997); *Thomas*, 749 F.3d at 222; *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1027 (3d Cir. 1991).

"A policy is made 'when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or edict.'" *Lebie v. Borough*, No. 13-cv-6819, 2014 WL 2085518, at *2 (E.D. Pa. May 16, 2014) (quoting *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990), *superseded in irrelevant part by statute*, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1072). "A custom may exist when, 'though not authorized by law, such practices of state officials are so permanent and well settled that they operate as law.'" *Id.* (quoting *Regan v. Upper Darby Twp.*, 363 F. App'x 917, 923 (3d Cir. 2010)). "Custom requires proof of knowledge and acquiescence by the decisionmaker." *Robinson v. City of Philadelphia*, No. 15-cv-1574, 2015 WL 5965003, at *7 (E.D. Pa. Oct. 13, 2015) (quoting *McTernan v. City of York, PA*, 564 F.3d 636, 658 (3d Cir. 2009)). "It is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom." *Lebie*, 2014 WL 2085518, at *2 (quoting *Andrews*, 895 F.2d at 1480); *see also id.* at *3 (reiterating that Third Circuit case law "unequivocally imposes on [p]laintiff an 'obligation to plead in some fashion that [a natural person] had final policy making authority, as that is a key element of a [*Monell*] claim.'") (quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 135 n.11 (3d Cir. 2010)).

IV.    **ANALYSIS**[19]

A.    **Exhaustion under the PLRA**

The Court agrees with the County of Chester and the PrimeCare Defendants that

Crawford did not exhaust his available administrative remedies as required under the PLRA. If

an inmate files only "procedurally defective grievance[s]," then he has failed to exhaust his

administrative remedies. *See Walker v. Glunt*, 654 F. App'x 531, 534 (3d Cir. 2016) (finding that

grievance that was unsigned by inmate was procedurally defective under the PLRA's exhaustion

requirements); *Curdo v. County. of Chester*, No. 24-cv-132, 2024 WL 3445005, at *9 n.104

(E.D. Pa. July 17, 2024) (finding that none of plaintiff's grievances regarding dental treatment

performed by Defendants PrimeCare and Zarkowski were signed by a compliant officer, but

finding this was not dispositive only because the County of Chester conceded receipt of one of

the grievances). Our sister districts have repeatedly found unsigned prison grievances to be

insufficient evidence of exhaustion—especially those not signed or marked as received by a

prison officer. *See e.g., Mitchell v. Silverio*, No. 1:21-cv-01307, 2023 WL 5512227, at *4 (M.D.

Pa. Aug. 25, 2023) (granting summary judgment for defendants where plaintiff submitted

evidence of a grievance form that was unsigned and predated the date of the events giving rise to

the grievance); *Real v. Dunkle*, No. 3:11-cv-2071, 2014 WL 7335039, at *14 (M.D. Pa. Dec. 19,

2014), *aff'd*, 652 F. App'x 84 (3d Cir. 2016) (finding no evidence to substantiate plaintiff's

averment that he filed a grievance, where plaintiff's copy of the grievance was not signed as

received by the Grievance Coordinator and was not given a grievance tracking number);

---

[19]    Crawford alleges that the events giving rise to his deliberate indifference claim—namely, the alleged inadequate dental treatment—occurred between January 28, 2022, and February 22, 2024, the date he filed his Complaint. *See* Compl. at 7. Accordingly, his claims are within the two year statute of limitations for section 1983 claims. *See* 42 Pa. C.S. § 5524; *Sameric Corp. v. City of Philadelphia*, 142 F.3d 582, 599 (3d Cir. 1998).

*Matthews v. Villella*, No. 4:cv-08-0964, 2011 WL 2360217, at *6 (M.D. Pa. May 18, 2011) (declining to find that a prison grievance was filed, where it lacked a signature and date from the Grievance Coordinator and had no "received" stamp by the prison), *report and recommendation adopted*, 2011 WL 2293126 (M.D. Pa. June 9, 2011), *aff'd*, 442 F. App'x 623 (3d Cir. 2011).

Here, Crawford alleges that he initiated the administrative review process by filing several prison grievance forms at Chester County Prison regarding his tooth pain and need for dental care. Yet, the two grievance forms he attaches to his Complaint are marked "copy," and are signed by Crawford, but not by a prison officer. *See* Compl. at 25-28. These "copies" of Crawford's grievance forms are dated January 15, 2022, and April 28, 2023, respectively, but bear no stamp, grievance number, or other indication of receipt by prison personnel. *See id.* Moreover, Defendants challenge Crawford's assertion that these grievances were ever filed. The County of Chester recalls only one prison grievance submitted by Crawford, which concerned Covid-19 quarantine policies and had nothing to do with dental care. *See* Chester SOF at ¶ 47. The PrimeCare Defendants submitted an affidavit from their Health Services Administrator at Chester County Prison, stating that she too is unaware of any submitted grievance regarding Crawford's dental care. *See* Widmayer Aff.

Crawford failed to respond to Defendants' exhaustion arguments with proof or other indication that the "copies" he provided to the Court were legitimate copies of grievances actually received by prison personnel. Without any evidence to that effect, the Court considers the possibility that Crawford "could have prepared [the grievance copies] on a blank [prison] grievance form at any time." *See Real*, 2014 WL 7335039, at *14 (finding that one of plaintiff's grievances was not submitted, where plaintiff's proffered copy "was not signed as received by the Grievance Coordinator . . . [and] was not given a Grievance tracking Number."). Thus, the

Court cannot find that Crawford actually submitted grievances regarding his dental care with the Chester County Prison. Neither can the Court find (because Crawford did not allege, and the record does not support) that he was prevented from filing a grievance or that such remedies were unavailable to him. *See Rinaldi*, 904 F.3d at 268 ("[O]nce the defendant has established that the inmate failed to resort to administrative remedies, the onus falls on the inmate to show that such remedies were unavailable to him.").

If Defendants are only in receipt of one grievance, which concerns only Chester County Prison's Covid-19 quarantine policies, then such grievance shares no factual basis with Crawford's current allegations of inadequate dental care. *See Jackson*, 244 F. App'x at 513 (finding that, for exhaustion purposes, there must be a "shared factual basis" between an inmate's grievance and the claims in the complaint). Moreover, if this is the only submitted grievance on record, then Crawford has failed to "put the prison officials on notice of the persons claimed to be guilty" of showing deliberate indifference to his serious medical needs. *Wireman*, 2018 WL 10456721, at *12 (quoting *Spruill*, 372 F.3d at 234). Thus, the Court finds that Crawford has failed to exhaust his administrative remedies in accordance with the PLRA.

### B.    Deliberate Indifference to a Serious Medical Need

Even if Crawford's grievances were legitimate, the record is still devoid of any factual dispute, as needed for Crawford's deliberate indifference claims to survive summary judgment. In his Complaint, Crawford alleges that Defendants were deliberately indifferent to his serious medical needs, in violation of his Fourteenth Amendment rights. At the time of filing his Complaint, Crawford was a pretrial detainee held at Chester County Prison. Since "the Fourteenth Amendment affords pretrial detainees protections 'at least as great as the Eighth Amendment protections available to a convicted prisoner,'" the Court will evaluate Crawford's

claims of inadequate medical care under the Eighth Amendment standard used to evaluate similar claims. *Natale*, 318 F.3d at 581 (applying the standard used in *Estelle v. Gamble*, which dealt with prisoners' claims of inadequate medical care under the Eighth Amendment, to a claim of inadequate medical care by a pretrial detainee under the Fourteenth Amendment).

The PrimeCare Defendants concede that Crawford had serious medical needs, *see* PrimeCare Br. at 14, and the Court agrees. As early as April 2021, Crawford suffered from tooth pain and swelling, *see* Chester SOF at ¶ 23, which Dr. Kneal soon attributed to tooth decay, caries, and pulpitis. PrimeCare SOF at ¶¶ 11-13. Crawford's complaints of tooth pain and swelling then continued for the next three years and affected his ability to chew food. *See. e.g.*, Chester SOF at ¶ 43; PrimeCare SOF at ¶¶ 41, 51, 64-65. His dental condition worsened over time, leading to severe tooth decay, fractures, and caries. *See, e.g.*, Chester SOF at ¶¶ 21, 33-34; PrimeCare SOF at ¶¶ 23, 27, 37, 52, 89. As treatment, he was prescribed antibiotics and painkillers, *see, e.g.*, Chester SOF at ¶¶ 24, 26, 42; PrimeCare SOF at ¶¶ 14-15, 21, 28, 40, 49, 56, given composite and temporary fillings, PrimeCare SOF at ¶¶ 20, 55, 92, at least one tooth extraction, Chester SOF at ¶ 28; *see* PrimeCare SOF at ¶ 29, and underwent an alveoplasty with an oral surgeon. *See* PrimeCare SOF at ¶ 97-99. The severity of Crawford's dental condition, as shown by the record, is clearly one "diagnosed by a physician as requiring treatment." *See Mitchell*, 466 F. App'x at 86 (quoting *Lanzaro*, 834 F.2d at 347). Even if it were not, it is clear from the record that without the many treatments performed, Crawford would have likely suffered increased pain and further deterioration of his teeth and gums. A layperson could easily find that Crawford's condition required a dentist's attention. *See id.* Thus, the Court finds that Crawford had "serious medical needs." *See id*. The decisive question, then, is whether Defendants were *indifferent* to Crawford's serious medical needs.

The record shows that the County of Chester and the PrimeCare Defendants knew of a risk to Crawford's health, but it does not support Crawford's assertion that they disregarded that risk. The Complaint asserts that Defendants "maintain[ed] limitations on [d]ental treatment for non-medical reasons, thereby preventing dentists from performing all necessary and appropriate dental procedures most commonly used for restorative dentistry or any corrective care . . . for non-medical purposes." Compl. at 8-9. In support of this, however, Crawford alleges only that Defendants denied him his preferred treatment of dentures, *id.* at 12-14, in favor of an alleged "extraction-only" policy or custom, *id.* at 9. Crawford states that he was informed that Chester County Prison's dental care policy prevented him from getting dentures until his release. *Id.* at 12. At best, this is an allegation of medical negligence or malpractice, which is not a basis for a deliberate indifference claim. *Lopez*, 499 F. App'x at 146; *see Mitchell*, 466 F. App'x at 86–87; *Lanzaro*, 834 F.2d at 346. Crawford makes clear that his opinion regarding his desired treatment differed from that of his dentists, but this also does not constitute deliberate indifference. *See id.* This Court recognizes the considerable latitude afforded to medical professionals in the diagnosis and treatment of inmates, *Young*, 266 F. App'x at 194, and declines to opine whether a different treatment plan would have been better suited for Crawford.

What is more, Defendants counter Crawford's allegations with evidence of extensive dental care that was not limited to tooth extractions. Defendants provide records of three years' worth of sick call requests submitted by Crawford, records of each resulting visit with a PrimeCare medical professional, and nearly every dental exam in between. This evidence shows that Crawford attended over a dozen dental examinations, and several dozen "sick" appointments, over the course of three years. At these appointments, PrimeCare medical and dental professionals offered Crawford a variety of treatments, including medications, fillings,

extractions, and root canals. *See* Chester SOF at ¶¶ 24, 28; PrimeCare SOF at ¶¶ 20, 29, 92, 97-99, 116-18. Crawford's dentists often attributed any regression in his condition to Crawford's failure to maintain proper dental hygiene and take his medications as prescribed. Chester SOF at ¶ 24; PrimeCare SOF at ¶¶ 14-15, 58-60, 73, 76. Still, Crawford has failed to respond with evidence to dispute these competing allegations. Crawford has failed to meet his burden to demonstrate a factual dispute regarding the degree of care and treatment he received, and no other dispute of fact is apparent in the record. Accordingly, the Court finds that the County of Chester and the PrimeCare Defendants were not deliberately indifferent to Crawford's serious medical needs.

### C.    Municipal Liability under *Monell*

Notwithstanding Crawford's failure to demonstrate deliberate indifference, his claim against the County of Chester requires that he establish a theory of municipal liability under *Monell v. Department of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978), which he also has not done. Crawford alleges that the County employed an "extraction only" policy, under which its medical staff would decline to consider other better-suited dental treatments in favor of tooth extractions. Compl. at 8-9. Yet, Crawford cannot point to any specific policy enacted at Chester County Prison which had this effect. By contrast, the County of Chester, in its Motion for Summary Judgment, identifies its policy for oral and dental care (Policy No. CHCP-J-E-06) and states that it coincides with National Commission on Correctional Health Care ("NCCHC") standards, which support the implementation of a variety of treatments besides extractions. Chester Br. at 3-4. Crawford failed to respond to these allegations with further proof that an "extraction-only" policy existed at Chester County Prison during his time there, and thus has failed to meet his burden to demonstrate that a factual dispute exists on this issue. The Court

finds that no "decisionmaker possessing final authority to establish municipal policy with respect to the action" has issued "an official proclamation, policy, or edict" regarding tooth extractions at Chester County Prison. *See Lebie*, 2014 WL 2085518, at \*2 (quoting *Andrews*, 895 F.2d at 1480).

Crawford also has not alleged the existence of a "custom" at Chester County Prison that operates to the same effect as an "extraction-only" dental policy. A custom may exist when the "practices of state officials are so permanent and well settled that they operate as law," *id.* (quoting *Regan*, 363 F. App'x at 923), but such a custom "requires proof of knowledge and acquiescence by the decisionmaker," *Robinson*, 2015 WL 5965003, at \*7 (quoting *McTernan*, 564 F.3d at 658). Here, as before, the record is informative. Defendants have produced examples of numerous treatments available to inmates at Chester County Prison. Plus, Crawford *himself* is recorded as having received a composite filling, PrimeCare SOF at ¶ 20, a temporary filling, *id.* at ¶ 92, and an alveoplasty arranged by Dr. Kneal and performed by an outside oral surgeon, *id.* at ¶¶ 97-99. This disproves Crawford's allegations of an "extraction-only" policy or custom at Chester County Prison, and Crawford has not responded to Defendants' evidence with further factual support for his assertions. The Court finds that Crawford has failed to establish a theory of municipal liability against the County of Chester. *See Monell*, 436 U.S. at 691-94.

## V.    CONCLUSION

This Court concludes that Crawford has failed to establish a genuine dispute as to any material fact, and that summary judgment for all remaining Defendants is appropriate. Defendants (the County of Chester, Pennsylvania, PrimeCare Medical, Inc., David Kneal, DMD, and Martin Zarkoski, DMD) are entitled to judgment as a matter of law on the deliberate

indifference claims, which are the only remaining claims in this case. Defendants' Motions for Summary Judgment are granted.

     A separate Order follows.


                                          BY THE COURT:


                                          */s/ Joseph F. Leeson, Jr.*
                                          JOSEPH F. LEESON, JR.
                                          United States District Judge